UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CRIMINAL NO. 21-20693

vs.                                         HON. GEORGE CARAM STEEH

VERDINE DAY,

Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

## INTRODUCTION

Verdine Day disguised her lies, corruption, and betrayal well from her colleagues, family, and friends.  In public she declared, "I have had so much joy over the past 33 years working side by side with people I respect." *See* https://www.detroitnews.com/story/news/local/detroit-city/2019/04/04/detroit-police-fire-honor-women-blue/3362002002/.  But, in private, she disrespected and exploited over 1,000 first responders who entrusted Day with their hard-earned wages. Her intricate theft of their money for years was finally discovered, and the ugly truth was disclosed to 1,142 Detroit fire fighters and emergency medical technicians in this bulletin:



## DETROIT FIRE FIGHTERS ASSOCIATION
## I.A.F.F. LOCAL 344
# OFFICIAL BULLETIN

Phone: (313) 962-7546 | Fax: (313) 962-7899 | Web: www.DFFA344.org

**OCTOBER 23, 2019**

**DFFA MEMBERS:**

The DFFA is doing its level best to keep all members informed in a legally expeditious manner due of what we have recently been made aware of internally.  This is a live matter, the seriousness of the matter and the fact that this situation is out of the normal parameters of what the officers of this association are expected to understand, we are allowing and working under the professional recommendations of the DFFA C.P.A. Firm and our attorneys advise to control the matter properly as you would expect.

The DFFA continues the process of contacting all persons/vendors/banking institutions/IAFF, etc. while conducting our expansive daily duties as officers of the association and will NOT pause, we are as you would expect moving full speed ahead on all matters/duties.

I called for an Emergency DFFA Board Meeting on Monday, October 21st 2019 to report the matter to the entire Board, in attendance was our Legal Team and C.P.A. The DFFA board in unified in this matter, the board requested DFFA legal counsel to issue a singular statement at that time that our board members could report to the membership, attached is the legal statement produced by DFFA legal counsel.

The DFFA board is available for further inquiries and will continue to update the membership as this matter progresses.

> **Dear Brothers and Sisters:**
>
> *We have recently learned that former Treasurer Verdine Day misused Union assets while serving as the Treasurer of this Local.*
>
> *As of yet, we have not determined the exact amount involved or the time period during which this misuse occurred.*
>
> *We have authorized an immediate forensic audit of all the Local's books and records to answer these questions.  And, we will immediately notify the appropriate authorities of this development.*
>
> *We will keep you apprised of the status of the audit and all other actions we take on behalf of the membership.*
>
> **Sincerely,**
>
> **The DFFA Executive Board and Board of Directors**

Fraternally,
**MICHAEL V. NEVIN**
**President – Local 344**

BULL 49-2019

Day stole from her "brothers and sisters" and spent the money on selfish pleasures such as Caribbean cruises, hotels, and airline flights across the country and to Europe. Even worse, she stole money intended for charity.  Because of her egregious conduct and the need to deter others who are similarly situated in a position of trust, the government requests that this Court impose a sentence at the mid-point of the guideline range of 24 months.

## **BACKGROUND**

The Detroit Fire Fighters Association, Local 344, International Association of Fire Fighters (DFFA) represents a bargaining unit comprised of: (1) all non-civilian positions within the City of Detroit Fire Department, including fire chief, fire marshal, fire captain, and fire fighter; (2) several civilian positions such as fire dispatcher, supervisor of fire apparatus, and auto repair foremen; and (3) emergency medical technicians (EMTs).  PSR ¶ 10; Victim Impact Statement (Exhibit 1).  The DFFA is considered a 501(c)(5) Labor Organization with the purpose to protect or promote the interest of the members by bargaining collectively with their employer to secure better working conditions, wages, or similar benefits.  PSR ¶ 10.

Verdine Day was hired by the Detroit Fire Department on or about February 3, 1986.  She worked as a firefighter, engineer, and held other positions in the union before being elected by her peers to the executive board of the DFFA as

3

Treasurer on or about November 2015.  She held the position of Treasurer from December 1, 2015 until her retirement from the DFFA and the City of Detroit on September 13, 2019.  As an Executive Board Officer, Day also served on the DFFA Board of Directors along with the other executive officers and district directors. PSR ¶ 9.

As set forth in the DFFA's Constitution and By-Laws, Day's responsibilities included: (a) receiving monies due to the union and providing receipts for payments received; (b) maintaining receipts of any payments made with union funds for necessary expenses and/or supplies; (c) maintaining and keeping safe the monies of the union; (d) maintaining records detailing all monies received; (e) maintaining records of all monies expended and the purpose for which payments were made; and (f) providing an itemized financial report at monthly membership meetings.  PSR ¶ 11. Day was also responsible for maintaining a petty cash fund, collecting initiation fees from fire fighters, providing an itemized financial report at monthly membership meetings, and forwarding the annual audit to the International General Secretary-Treasurer.  PSR ¶ 11.

For her services as Treasurer, Day received a salary of 40% of the base pay of a fire fighter per year.  In addition to a salary, Day received an expense account which included a monthly car allowance, a cell phone allowance, paid parking, and a credit card provided by DFFA.  An American Express card was provided to Day

by the DFFA and was to be the primary card used by her.  However, in the event it was not accepted, the DFFA provided Day with a Bank of America card.  All credit card charges were required by the DFFA to be supported with a receipt maintained by Day.  PSR ¶ 12.

The DFFA's Board of Directors Policy Manual, Section 4 (Standards of Conduct) outlines the use of DFFA credit cards: "Executive Board Officers, by virtue of the confidence put to them by the membership will, at all times, use reason and attention to the DFFA's budget.  These Credit Cards are to be used with good judgment and to further the aims and goals of the members of Local 344.  At no time will these credit cards be used for a personal nature."  Thus, Day was prohibited from using DFFA credits cards or monies for any personal expenses or purchases. PSR ¶ 12.

In February 2020, the DFFA hired an outside firm to conduct an independent audit of the union's finances.  The audit uncovered Day's criminal scheme to rob her union brothers and sisters.  PSR ¶ 14.  Day's secret scheme allowed her to steal and spend union funds for years.  She did so by: (a) issuing checks in her name and then changing the name of the payee in the DFFA's QuickBooks software; (b) cashing checks which were voided by her in QuickBooks; (c) writing checks made payable to cash; (d) withdrawing cash from DFFA accounts; (e) entering the name of a charity as the payee in QuickBooks when the DFFA did not authorize a

donation; (f) diverting DFFA funds intended for charity; and (g) using DFFA credit cards as her own personal credit cards.  PSR ¶¶ 15-21.  In total, Day stole over $220,000 from the first responders of the DFFA.  PSR ¶ 24.

## SENTENCING GUIDELINE CALCULATIONS

On December 1, 2021, Day pleaded guilty to bank fraud with a negotiated plea agreement. (ECF No. 18). The Probation Department calculated a guideline range of 21- 27 months. PSR ¶ 66.  Day's plea agreement contains a cap at the midpoint of the guideline range as determined by the Court. (ECF No. 18, PageID.58). The government agrees with the Probation Department that the following offense characteristics and enhancements are applicable:

§ 2B1.1(a)(1)(A) and (B): base offense for bank fraud………………7
§ 2B1.1(b)(1)(F): loss amount >$150k but <$250k………………..+10
§ 3B1.1: abuse of position of trust..…………………………………+2

PSR at ¶¶ 30-33.  When combined with a criminal history category of I and a reduction for acceptance of responsibility, the resulting sentencing range is 21-27 months. PSR at ¶ 66.  Day filed objections to the two enhancements: (1) the total amount of the loss and (2) abuse of position of trust.

Total Amount of Loss

The basis for the objections to the amount of loss is not clear to the Probation Department or to the government, and there is no discussion regarding the amount of loss in the sentencing memorandum submitted by the defense.  In

6

Day's plea agreement, Day "agree[d] that the following facts are true. . . DAY fraudulently obtained approximately $167,900 in union funds in the custody and control of Comerica Bank, Chemical Bank, and Bank of America . . . [and] DAY charged approximately $52,143.65 in personal expenses using DFFA credit cards." (ECF No. 18, PageID.52-53). The Presentence Investigation Report (PSR) includes losses in the same amounts in paragraphs 21 and 23. PSR ¶¶ 21, 23. Accordingly, Day should not be contesting the loss amount in the PSR which mirrors the amount of loss to which she stipulated in her plea agreement.

Abuse of Position of Trust

Section 3B1.3 of the Guidelines Manual directs that the offense level should be increased two levels if "the defendant abused a position of public . . . trust." USSG § 3B1.3. The Application notes specifically direct that the enhancement be applied in this precise situation: "If the offense involved theft or embezzlement from a labor union and the defendant was a union officer or occupied a position of trust in the union . . . an adjustment under the section for an abuse of a position of trust will apply." USSG § 3B1.3, comment. (n. 5(B)).

For the above reasons, the applicable guideline range is 21-27 months.

## APPLICATION OF 18 U.S.C. § 3553

Title 18, United States Code, Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the

purposes of sentencing. In order to determine the particular sentence to impose, this Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). An application of the sentencing factors to this defendant justifies a sentence at the middle of the guideline range.

### A.    The Guidelines are the Lodestar in Sentencing.

Although the sentencing guidelines are no longer mandatory, they are guiding and instructive.  The guidelines are the "starting point" and "initial benchmark" for determining an appropriate sentence. *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (quoting *United States v. Bistline*, 665 F.3d 758, 761 (6th Cir. 2012) and *Gall v. United States*, 552 U.S. 38, 49 (2007)).  The Guidelines are not only the starting point for most federal sentencing proceedings but also the loadstar.  *Molina-Marinez v. United States*, 578 U.S. 189, 200 (2016).  So, in the instant case, the applicable sentencing range should guide the Court to a sentence of 24 months.

### B.    The Nature and Seriousness of the Offense and the History and Characteristics of the Defendant

#### 1.    Nature and Seriousness of the Offense

The nature and circumstances of Day's repeated offenses are serious.  Day was an elected officer of a prominent union whose members risk their lives and protect our community on a daily basis.  These first responders relied upon Day to

handle their hard-earned money without the influence of self-interest.  Instead, Day

allowed her judgment to be fundamentally compromised by the lure of cash.

Day's position as Treasurer gave her power and access to a piggy bank.  Instead of

using her power to protect the bank, she allowed herself to be corrupted by the

power.  Over several years, she took over $220,000 from the union.  According to

the Victim Impact Statement submitted by the Executive Board and Membership

of the DFFA, the money Day took and spent to support her lifestyle and desire to

travel the world was "voluntarily deducted from the wages of DFFA members who

daily risk their lives to protect the City of Detroit citizens" and was "intended for

the exclusive use of the DFFA operation in service of DFFA members." *See*

Victim Impact Statement of the DFFA (Exhibit 1, pg. 2). So, Day stole from her

union brothers and sisters and spent the money on herself instead of on items and

purposes that would have benefitted her fellow union members.  As just a few

samples illustrate, Day vacationed and gave herself the life she wanted with the

dues money of others instead of her own wages:

- 12/15/2017: Royal Caribbean                $9,553.04
- 6/24/2019:  Brilliance of the Seas        $6,100.70
- 10/6/2019:  Liberty of the Seas           $8,975.98
- 10/17/2018: Delta Airlines                $1,249.20
  (DTW to Atlanta)
- 5/14/2019:  Delta Airlines                $535.20
  (DTW to Ft. Myers)
- 5/10/2016:  Sixt Rent A Car               $453.85
  Myrtle Beach, SC

- 1/22/2017: Hotel Hacienda Del Rio     $219.42
  Tijuana, Mexico
- 1/25/2017: Hotel Hacienda Del Rio     $119.85
  Tijuana, Mexico
- 4/15/2019: Lehigh Resorts             $234.15
  Lehigh Acres, FL
- 6/12/2019: Ramada-Apollo Amsterdam    $100.77
  Amsterdam, Netherlands
- Personal car insurance premiums
- Personal telephone and communications service
- Satellite and cable TV service
- Personal retail store purchases
- Purchases at U.S. and State of Michigan parks including the following:

  | | | |
  |---|---|---|
  | 12/22/2017: | Michigan Parks and Harbors | $608.00 |
  | 04/22/2019 | Michigan Parks and Harbors | $290.00 |
  | 07/05/2019 | Michigan Parks and Harbors | $168.00 |

- Personal purchases at furniture stores
- Personal purchases at home improvement stores
- Alcohol and food purchases including the following:

  | | | |
  |---|---|---|
  | 11/04/2017 | Firekeepers Kabaret | $61.70 |
  | 04/29/2018 | Applebee's Niagara Falls | $213.73 |
  | 05/22/2019 | Casino Bar/Sequel Toledo, OH | $101.00 |
  | 10/04/2019 | Bubba Gump Cozumel | $106.00 |

Day's callous theft did not stop at embezzling the wages of her colleagues; she stole money intended for charity. In the following example, Day diverted and pocketed $1,500 intended by the DFFA to be a donation to the NAACP:



Day included her home address on check #1013.
Her address is redacted from this filing.



The dark secrets Day kept from those she befriended is striking and disturbing.

Day stole from her colleagues, friends, and charitable causes over nearly four years.

So, her criminal activity was not the result of a spontaneous decision borne out of

11

financial distress; rather, her law breaking was generated and prolonged by daily and hourly decisions and it was within her sole power to cease her criminal activity and disloyalty at any point.  As described in the DFFA's Victim Impact Statement, Day's crimes continued until the DFFA was "forced to hire professionals to conduct an expensive forensic audit to simply quantify the dimensions of her malfeasance.  And, it has been forced to finance civil litigation against Ms. Day to recoup the monies she stole."  *See* Victim Impact Statement of the DFFA (Exhibit 1, pg. 4).  So, Day's crimes against the DFFA caused collateral financial damage in addition to the loss of the funds she stole.

Undeniably, the harm Day caused is greater than the financial loss to the DFFA and its first responders.  Day has cast a stain on the DFFA and undermined the trust of its members and the general public.

### 2.   Characteristics of the Defendant

Day was provided the familial support, resources, and virtues necessary to live a law-abiding life and to understand the consequences of choosing not to do so. Given her "wonderful" support (PSR ¶ 46) and education, she could have been an outstanding Board member for the DFFA. Instead, she chose to rob her friends. Rather than protecting their wages, she made deliberate choices day after day to steal from them, not in the heat of passion, but after careful deliberation.  It is especially stunning that she took so much money for so many years from people

12

she appeared to care for and who cared for her.  As evidenced by all of the letters submitted on her behalf, Verdine Day was far from an outcast amongst her peers seeking retribution.  She was loved, depended upon, and trusted.  Her willingness to abuse the trust her friends and colleagues placed in her speaks loudly about her character and integrity and justifies a sentence at the middle of the guideline range.

### C.      Respect for the Law and Just Punishment

The Court's sentence for Day's crimes needs to promote respect for the law and impose just punishment for her misconduct.  Day was a trusted DFFA official, and she intentionally breached the trust of over 1,100 union members. These men and women believed that their Treasurer was protecting their money, not stealing it. Unquestionably, her abuse of the trust inherent in her position harmed the DFFA and the labor movement generally.  There is no doubt that this Court should impose a guidelines prison sentence for her wrongdoing in order to vindicate the rule of law and in light of such long-standing and extensive criminal conduct.

### D.      Deterrence

"Sentences influence behavior" *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010) (*quoting United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007)), and this is why deterrence is such an important sentencing factor. Millions of union members look to and depend on their leadership to act in the best interests of the membership. Current and future leaders must understand that

13

substantial abuses of this trust — especially by board members — will be severely punished. Union members depend on the leadership of their unions to act zealously in the best interests of the membership, which includes managing and using the dues money of union members with integrity and only for lawful purposes approved of by the membership.  Given the importance of the financial integrity of labor unions, general deterrence is an important component of the Court's sentence.  Our union leaders must conduct themselves at the highest level of honesty, integrity, and transparency.  Senior union officials need to hear loud and clear that labor corruption, and the abuse of the trust placed in them by union members and their families, will be punished.

Union corruption can be difficult to expose largely due to a lifelong brother/sisterhood amongst its members.  In a series of prosecutions in this district, our judicial system is sending a message that corruption by labor union leaders, when exposed, will be punished.  This Court should continue to broadcast this message.

### E.    A Sentence within the Guidelines will Help Avoid Disparities.

The sentencing guidelines help courts avoid disparities of similarly situated defendants. In other words, "[t]he Guidelines exist to help ensure that similarly-situated defendants are punished similarly." *United States v. Vassar*, 346 Fed.Appx. 17, 29 (6th Cir. 2009) (citing *United States v. Boscarino*, 437 F.3d 634,

638 (7th Cir. 2006)). Disparities are at their "ebb" when courts impose sentences within the guideline range. *Boscarino*, 437 F.3d at 638. In contrast, the "more out-of-range" the sentence, "the more disparity there will be." *Boscarino*, 437 F.3d at 638. The PSR notes that the average sentence for bank fraud at an offense level of 16 and criminal history category I is 18 months; however, this Court should be mindful that this case involves aggravating circumstances not routinely present in bank fraud cases: Day perpetrated her fraud upon first responders in our community who entrusted their wages to her care. Accordingly, this Court should sentence Day within the guideline range to help ensure appropriate and consistent sentences for fiduciaries who steal the money entrusted to them by their colleagues.

## **CONCLUSION**

Based on all of the § 3553(a) factors and to acknowledge the significant impact on the DFFA as described in its Victim Impact Statement, the Court should impose a sentence at the midpoint of the guideline range.

15

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Sarah Resnick Cohen*
SARAH RESNICK COHEN
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
sarah.cohen@usdoj.gov
(313) 226-9637

Dated:  April 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to:

William R. Ford
Attorney for Defendant

*s/Sarah Resnick Cohen*
SARAH RESNICK COHEN
Assistant U.S. Attorney

Dated:  April 21, 2022



# DETROIT FIRE FIGHTERS ASSOCIATION

**I.A.F.F. Local 344 • Organized May 1933**

**333 West Fort Street, Suite 1420 • Detroit, MI 48226-3149**

**(313) 962-7546 | (313) 962-7899 fax | www.dffa344.org**

**Thomas M. Gehart**
*President*

**Christopher A. Smith**
*Vice President*

**Jeffrey M. Pegg**
*Secretary*

**Timothy R. Carter, II**
*Treasurer*

**Directors**
M. Cretu
A. Wyatt
G. Stewart
R. Best
J. Cangialosi
A. Schwedler
J. Koch

**Emeritus Presidents**
Daniel Delegato
Daniel F. McNamara

UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.                                              Case No. 21-CR-20693

VERDINE DAY,                          Hon. George Caram Steeh

Defendant.
_____

## DETROIT FIRE FIGHTERS ASSOCIATION'S (DFFA)
## VICTIM IMPACT STATEMENT

**GOVERNMENT
EXHIBIT
1**

Affiliated _____

| International Association of Fire Fighters AFL-CIO | Michigan State AFL-CIO | Metropolitan Detroit AFL-CIO |



" . . . It shall be . . . [the DFFA Treasurer's] duty to maintain and keep safely the monies of the Local . . . ."  (DFFA Constitution, Article X §6).

Q  . . . You [Verdine Day] misrepresented to the membership what you were doing with the Union's finances; isn't that true?

A  Yes, I did.

> -- Verdine Day Deposition Transcript in *DFFA v. Day*, Macomb County Circuit Court Case No. 2021-000900-NZ, at 71-73 (emphasis added)

This is the DFFA's -- and its members' -- Victim Impact Statement in the case

entitled: *United States of America v. Verdine Day* (Case No. 21-CR-20693).

As explained below, we believe Ms. Day should receive the most severe

punishment possible for her extensive, calculated -- and now admitted -- crimes

against her brother and sister Union members.

As also explained below, this Court should disregard any appeals for leniency

by Ms. Day. Or, pleas by others on her behalf. Ms. Day's requests are simply self-

serving efforts to avoid the consequences of her appalling conduct.

The pleas of others are misinformed. Or, they have been deceived by the same

conduct that Ms. Day employed to conduct her long campaign of theft.

The DFFA is a labor organization and the exclusive collective bargaining

representative of over 1,000 brave and hard-working City of Detroit fire fighters and

EMTs.

Ms. Day is the former elected, full-time Treasurer of DFFA -- a position of

trust and fiduciary obligation within the Union.

From Ms. Day's first days as the elected DFFA Treasurer, she began stealing

Union funds -- the hard-earned dues money of fellow Union members. Ms. Day

began serving as the DFFA Treasurer in December 2015. Her first misappropriation

of Union monies occurred that same month -- in December 2015.

Detroit Fire Fighters Association
I.A.F.F. Local No. 344

The monies Ms. Day took were intended for the exclusive use of the DFFA operation in service of DFFA members. The monies were voluntarily deducted from the wages of DFFA members who daily risk their lives to protect the City of Detroit citizens.

The longevity, breadth, and depth of Ms. Day's deceit and theft is breathtaking. Altogether, Ms. Day committed over 950 acts (approximately 117 fraudulent checks, 800 credit card charges, and 40 undocumented "expense report" payments) of theft and misappropriation, according to the independent forensic audit performed after Ms. Day retired.

Ms. Day carried out her racketeering scheme in a variety of ways. For example, Ms. Day:

1) altered the DFFA general ledger and its checks;

2) forged signatures on DFFA checks;

3) falsely recorded payments to nonprofits that she converted to her personal use, which is to say she stole from charities;[1]

4) voided or deleted checks from the DFFA accounting software and then cashed them for her personal use; and

5) used DFFA credit cards for craven purposes: spas and nail salons, a $10,000 Royal Caribbean cruise, personal limousines, Florida and Tijuana resorts, personal air travel, car rentals, and lavish bar and restaurant activity.

Ms. Day's intricately-designed theft persisted for the entire time she was the DFFA Treasurer -- nearly four (4) years. It was discovered only *after* her retirement and only *after* she hypocritically collected gifts and attributes in honor of her ostensible "years of service" to her fellow Union members.

---

[1] Payments recorded falsely as donations to nonprofits and charities include "donations" to the Special Olympics of Midland, Gleaners Food Bank, Detroit NAACP, Rainbow Connection (which "makes wishes come true for Michigan children with life threatening medical conditions"), charity softball, and Detroit Children's Hospital. One check alone was $2,600 to Rainbow Connection. And, this is consistent with her theft from the disadvantaged -- Day was the organizer for its "Pass the Boot" drive to collect cash donations for the Muscular Dystrophy Association. DFFA cannot quantify how much Day, the only individual involved in picking up the cash before it was counted, skimmed from the top. Day also took from efforts to assist fallen fire fighters -- skimming thousands off the top of two GoFundMe accounts for two slain fire fighters, and failed to repay the widow of a deceased fire fighter for memorial costs until the story was released to the press.

**Mercy and Leniency Requires Contrition**

Ms. Day will undoubtedly seek mercy and leniency from this Court. And others, who do not fully understand her appalling crimes and duplicity, will similarly urge mercy and leniency on her behalf.

The Court should reject these pleas.

Ms. Day has made not contrition for her fiduciary-breaching -- and now admitted -- crimes. To the contrary, Ms. Day has only exacerbated her crimes. The DFFA was forced to hire professionals to conduct an expensive forensic audit to simply quantify the dimensions of her malfeasance. And, it has been forced to finance civil litigation against Ms. Day to recoup the monies she stole.[2]

Ms. Day's crimes are *not* an aberrant act of an emotionally distraught or temporarily deranged individual. Rather, Ms. Day's crimes are the crimes of a grifter -- the actions of the cold-blooded, not the mistakes or foibles of the warm-hearted.

The pattern, longevity, and repetition of her conduct preclude *any* sympathetic reading of Ms. Day's behavior.

---

[2] The DFFA urged Ms. Day to resolve this issue *before* civil litigation. Ms. Day refused. The DFFA then sued Ms. Day to recover the over $300,000 she stole. (Macomb County Circuit Court Case No. 2021-000900-NZ). Still defiant, Ms. Day recently ignored the DFFA's offer of a Stipulated Partial Summary Disposition -- in the precise amount that, on December 2, 2021, she admitted to stealing in her guilty plea to this Court. The result? The DFFA must litigate further to recoup the losses.

Detroit Fire Fighters Association
I.A.F.F. Local No. 344

Finally, Ms. Day occupied a fiduciary position within the Union. As the elected DFFA Treasurer, Ms. Day was entrusted to handle Union assets -- the monies of her brother and sister members -- solely in the interest of the Union and its members. Ms. Day defiled that trust.

Wisdom literature tells us that the very bottom of hell is reserved for those who, when placed in a position of fiduciary trust, engage in treason and treachery. Ms. Day engaged in both.

For these reasons, Ms. Day is entitled to neither mercy nor leniency.

Instead, for the reasons summarized above -- *and* because Union officials who steal from their fellow Union members particularly offend the sensibilities of fairness and decency[3] -- the DFFA and its members ask this Court to impose the *most severe penalties possible*, including but not limited to full restitution, on Ms. Day.

The Executive Board and Membership of the
DETROIT FIRE FIGHTERS ASSOCIATION

April 7, 2022

---

[3] The recent convictions and severe punishments of corrupt UAW officials only underscore the contempt engendered by corrupt Union officials.